UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **KIMBERLY SIMS-FINGERS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO.  1:04-cv-1952-VSS-SEB |
| | ) |
| **CITY OF INDIANAPOLIS,** | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This cause is before the court on the defendant's motion for summary judgment.  The motion is fully briefed, and the court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *Robin v. Espo Engineering Corp.*,  200 F.3d 1081, 1088 (7th Cir. 2000).   "The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there is a genuine triable issue."  *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 893 (7th Cir. 2001).  "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment," *Lucas v. Chicago Transit Authority*, 367 F.3d 714,

726 (7th Cir. 2004), rather, "[t]he party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Robin*, 200 F.3d at 1088.  Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment."  *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## THE PLAINTIFF'S CLAIMS

Plaintiff Kimberly Sims-Fingers asserts two separate claims against defendant City of Indianapolis ("City").   Her first claim arises out of the fact that she was suspended and demoted in December 2003.  In her second claim, she alleges that she was paid less than similarly-situated male employees.  Because these two claims involve separate sets of relevant facts, they will each be examined in turn below.

### Discriminatory Suspension and Demotion Claim

The facts viewed in the light most favorable to Sims-Fingers relevant to her discriminatory suspension and demotion claim are as follow.  Sims-Fingers was employed by the Department of Parks and Recreation of defendant City of Indianapolis ("DPR") as a seasonal employee from 1984 until 1992.  In 1992, she began working full-time for DPR and held various positions, eventually becoming the manager of the City's Municipal Gardens Park.  In 2002, Sims-Fingers's supervisor, John Conner, stated on her performance evaluation that she "consistently [met] performance expectations and demonstrate[d] work practices at a level of a fully qualified and effective individual."

In 2003, a probationer worked at Municipal Gardens Park under Sims-Fingers's supervision to fulfill community service hours.  In a letter dated November 3, 2003, Sims-Fingers reported to the Marion County Probation Office that the probationer had completed 105

hours of service with DPR since October 25, 2003.  When the probation officer asked for additional information, Sims-Fingers informed her that the probationer actually had worked only 27 hours for the DPR, and that she had included hours worked at other not-for-profit agencies in the 105-hour total in her letter.   The probation officer reported her concerns about this discrepancy–and her suspicion that Sims-Fingers had purposely inflated the hours reported to help the probationer–to Sims-Fingers's supervisor, John Conner.  Sims-Fingers later stated in an email to the probation officer that she was "sorry that I tried to stretch the community service hours for her but I was really trying to help the young lady out."  (This will be referred to hereinafter as the "probation office incident.")

On December 17, 2003, Conner notified Sims-Fingers, in writing, that she was being suspended for five days without pay and then demoted to Assistant Park Manager at another park with an accompanying reduction in salary.  The reasons given for this disciplinary action on a form signed by Conner were as follow:

> An investigation into a complaint by a Marion Superior Court Probation Officer revealed that you lied to her about community hours served by a probationer at Municipal Gardens Family Center in a letter dated November 3, 2003.  You then admitted misrepresenting the community service hours performed at the Family Center.  Your representations were clearly inappropriate.  Such a misrepresentation violates the City's principles of employment, which require integrity as a condition of continued employment.  It also violates the City's standard of conduct (A(10):  making false statements or reports, or engaging in other dishonest conduct).
>
> In addition, you solicited funds from the community through your Indy Parks position on behalf of other community organizations, as reflected in the August 15, 2003 letter requesting contributions.  Such an activity is contrary to Indy Parks' money handling policies and a violation of the City's standard of conduct (A(3):  misappropriation of funds and A(27):  engaging in activities other than city assignments during work hours).

However, the person who made the ultimate decision to suspend and demote Sims-Fingers,

Joseph Wynns, Director of DPR,[1] did not know about the second allegation regarding soliciting funds, and based his decision solely on the probation office incident.[2]

Sims-Fingers alleges that her suspension and demotion were on account of her gender in violation of Title VII, 42 U.S.C. § 2000e et seq.  She has no direct evidence to support her allegation, so she has elected to utilize the indirect burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> The Title VII plaintiff employing this method has the burden to prove, by a preponderance of the evidence, a prima facie case of intentional discrimination. To make the prima facie case, the plaintiff must establish that: (1) she belongs to a protected class; (2) her performance met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated others not in her protected class received more favorable treatment.  If the plaintiff meets her burden, a presumption of discrimination arises, and the employer must articulate a legitimate and non-discriminatory reason for the employment action. Should the employer meet its burden, the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination. The ultimate burden of persuasion remains at all times with the plaintiff.

*Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 900-01 (7th Cir. 2005) (citations omitted). There is no dispute regarding prongs one and three in this case.  As for prong two, in cases such as this one in which the adverse employment action was a disciplinary action, "the second and fourth prongs of *McDonnell Douglas* merge."  *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 728 (7th Cir. 2004).

---

[1] The City asserts in its briefs that Wynns was not the ultimate decisionmaker; however, in its answer to interrogatories, it stated unequivocally that "[t]he decision to demote was decided by Joseph Wynns, Director, DPR."

[2] Wynns testified that he met with legal counsel and a person from the human resources department who had investigated the probation office incident and both of them recommended that Sims-Fingers be terminated, but he decided that would be too harsh.  He also testified unequivocally that he was not told about the fund-raising allegation, so that did not factor into his decision.

>In those situations, there is no question that the employee failed to meet his employer's expectations. Instead, the plaintiff must establish that he received dissimilar-and more harsh-punishment than that received by a similarly situated employee who was outside the protected class.

*Id.*

Sims-Fingers has identified a male employee, Mark Webster, whom she argues was similarly situated to her because he was "demoted" from a Park Manager II position to a Park Manager 1 position in 2003. Sims-Fingers asserts that Webster was treated more favorably than she was because, unlike her demotion, Webster's did not come with a reduction in pay. However, Webster was not similarly situated to Sims-Fingers at all; his "demotion" was not the result of a disciplinary action, but rather was at his own request for a transfer to a less demanding job.[3] In order to satisfy her prima facie case, Sims-Fingers would have to identify a male employee who was disciplined less severely (or not at all) after an allegation of misconduct was made against him that was similar in severity to the probation office incident. Because she has failed to do so, she has failed to satisfy her prima facie case, and the City is entitled to summary judgment on her discriminatory suspension and demotion claim.[4]

---

[3]One might certainly question the fiscal responsibility of allowing an employee to retain the same pay for a less demanding job, but that is irrelevant to Sims-Fingers's discrimination claim.

[4]Because Sims-Fingers has not satisfied her prima facie case, the court need not address her claim that the reasons given by the City for suspending and demoting her were pretextual. *See Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 273 (7th Cir. 2004). Most of the factual assertions Sims-Fingers discusses in her briefs are relevant only to the pretext issue: for example, the assertion that she did not falsify the probationer's hours, but merely made a mathematical and/or typographical error; the assertion that Wynns told her she would be reinstated to her position if she was "cleared" of the accusations against her, which she believes happened; the assertion that her 2003 performance evaluation suggests that she was performing satisfactorily even after the probation incident; and the undisputed fact that Wynns suggested that she apply for another park manager position shortly after her demotion.

Equal Pay Act Claim

Sims-Fingers alleges that the City violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"), by paying her less than it paid certain male park managers. The EPA does not require proof of discriminatory intent. *Cullen v. Indiana University Bd. of Trustees*, 338 F.3d 693, 698 (7th Cir. 2003). Rather, to establish a prima facie case under the EPA, a plaintiff must demonstrate that "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Id.* (citation and quotation marks omitted).

> In determining whether two jobs are equal, the crucial inquiry is whether the jobs to be compared have a "common core" of tasks, i.e., whether a significant portion of the two jobs is identical. Once the plaintiff establishes a common core, the court must ask whether any additional tasks make the jobs "substantially different."

*Id.* (citations and quotation marks omitted). "After a plaintiff has demonstrated a prima facie case, the employer may respond with affirmative defenses to show the pay differential is due to: '(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex.'" *Markel v. Board of Regents of Univ. of Wisc. Sys.*, 276 F.3d 906, 913 (7th Cir. 2002).

Sims-Fingers alleges in her complaint that between 2001 and 2003 she was paid a lower salary than eleven male park managers who job responsibilities were substantially similar to hers. Undoubtedly a "significant portion" of all of the park manager positions were identical, inasmuch as each involved managing an Indianapolis public park. However, the City has demonstrated by undisputed facts that each of the positions held by the male park managers were substantially different from Sims-Fingers's position.

Most obviously, five of the eleven male park managers named by Sims-Fingers

supervised parks that have aquatic facilities; the park that was managed by Sims-Fingers, Municipal Gardens, does not. The extra training and responsibility required by the aquatic facilities made those five positions substantially different than Sims-Fingers's position at Municipal Gardens, a fact that she does not seriously dispute.

As for the remaining six male park managers, one of them, Richard Townsend, actually made less than Sims-Fingers did from 2001-2003; the contrary information provided by the City was a typographical error.[5] John Schaust was the manager of Holliday Park, which was significantly larger than Sims-Fingers's Municipal Park: Holliday Park consists of 95 acres, three parking lots, the "Ruins," a native garden, and an observation deck, whereas Municipal Park consists of 6 acres, a spray area, a basketball court and a shelter. The court determines that the significant difference in the scope of the two parks makes the positions held by Schaust and Sims-Fingers substantially different. Christopher Martini was the manager of Southeastway Park, which consists of 188 acres, a nature center, and hiking trails; again, his position was not equal to Sims-Fingers's. Until 2003, Mark Webster was the manager of Brookside Park, which has a swimming pool; in 2003 he transferred to Washington Park, which consists of 128 acres with, inter alia, 9 parking lots, 4 playgrounds, 3 picnic shelters, and an 18-hole golf course; neither of his positions were equal to that held by Sims-Fingers. Randall Huggard was the manager of Washington Park in 2001. Nathan Robinson was hired as park manager of a park that was under construction; his job was "working with neighborhood associations, trying to

---

[5]Sims-Fingers argues that there is a factual dispute regarding whether Townsend's 2002 salary was actually $35,549.15, as the City originally reported, or $33,549.15, as the City now reports. The court sees no reason to question the City's explanation that the original figure was a typographical error, especially in light of the affidavit and accompanying documents the City has submitted in support of the lesser figure.

identify programs, partners" in anticipation of the new park opening; his job also was not equal to that performed by Sims-Fingers.

Sims-Fingers argues that the court should not consider the size and facilities of the various parks because the City did not specifically point to those factors when answering her interrogatories regarding what it considered in establishing park manager salaries. However, in considering whether Sims-Fingers has established her prima facie case, the court must determine whether the positions themselves are equal. *See Cullen*, 338 F.3d at 699 (comparison for purposes of prima facie case is "between positions, not individuals."). Because the positions are not equal in light of the substantial differences in the parks involved, Sims-Fingers has not satisfied her prima facie case, and the court need not consider the City's proffered justification for paying the employees at issue different salaries. The City is entitled to summary judgment on Sims-Fingers's Equal Pay Act claim.

## Title VII Pay Disparity Claim

For the same reasons that Sims-Fingers is unable to establish a prima facie case under the Equal Pay Act, she cannot establish a prima facie case under Title VII: she has not demonstrated that the men who were paid more than she were similarly situated to her. *See Cullen*, 338 F.3d at 704. Therefore, the City is entitled to summary judgment on Sims-Fingers's Title VII pay disparity claim as well.

## CONCLUSION

For the reasons set forth above, the City is entitled to summary judgment on each of Sims-Fingers's claims in this case.

SO ORDERED:   03/29/2006

_V. Sue Shields_
V. Sue Shields, Magistrate Judge

Copies to:

Robin C. Clay
OFFICE OF CORPORATION COUNSEL
rclay@indygov.org

Timothy V. Clark
CLARK COLEMAN & FREEMAN
ccfnattys@aol.com

Allison Wells Gritton
OFFICE OF CORPORATION COUNSEL
agritton@indygov.org